[965 NE2d 934, 942 NYS2d 432]

FEDERAL INSURANCE COMPANY, Respondent, v INTERNATIONAL BUSINESS MACHINES CORPORATION et al., Appellants.

Argued January 10, 2012; decided February 21, 2012

## POINTS OF COUNSEL

*Jones Day*, New York City (*Thomas H. Sear, Howard F. Sidman, Victoria Dorfman* and *Caryn L. Wolfe* of counsel), for appellants. I. This Court reviews a reversal of a summary judgment ruling de novo. (*Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575.) II. The *Cooper v IBM Personal Pension Plan* (US Dist Ct, SD Ill, Civ 99-829-GPM) action alleged a wrongful act as defined in the Zurich policy. (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257; *White v Continental Cas. Co.*, 9 NY3d 264; *Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514; *United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229; *Matter of Covert*, 97 NY2d 68; *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.*, 51 NY2d 651; *Sperling v Great Am. Indem. Co.*, 7

NY2d 442; *Morgan v Greater N.Y. Taxpayers Mut. Ins. Assn.*, 305 NY 243; *Block v Standard Ins. Co. of N.Y.*, 292 NY 270; *Abrams v Great Am. Ins. Co.*, 269 NY 90.) III. The Appellate Division's decision disregarded governing rules under New York law for construing insurance contracts. (*Fieldston Prop. Owners Assn., Inc. v Hermitage Ins. Co., Inc.*, 16 NY3d 257; *Belt Painting Corp. v TIG Ins. Co.*, 100 NY2d 377; *Rocon Mfg. v Ferraro*, 199 AD2d 999; *Teichman v Community Hosp. of W. Suffolk*, 87 NY2d 514; *United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229; *Hartol Prods. Corp. v Prudential Ins. Co.*, 290 NY 44; *Cammon v City of New York*, 95 NY2d 583; *People v Brown*, 235 AD2d 344.)

*Stroock & Stroock & Lavan LLP*, New York City (*Michael F. Perlis, Richard R. Johnson*, of the California bar, admitted pro hac vice, and *Ernst H. Rosenberger* of counsel), for respondent. I. A de novo standard of review applies to this Court's review of the Appellate Division's reversal of the trial court's summary judgment ruling. (*Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575.) II. Federal Insurance Company's coverage position, and the decision of the Appellate Division, are consistent with the plain language of the fiduciary policy, controlling U.S. Supreme Court Employee Retirement Income Security Act precedent, and all legal authorities on point. (*Security Mut. Life Ins. Co. of N.Y. v Rodriguez*, 65 AD3d 1; *Matter of Country Wide Ins. Co. [Russo]*, 201 AD2d 368; *McGrail v Equitable Life Assur. Socy. of U. S.*, 292 NY 419; *Katz v American Mayflower Life Ins. Co. of N.Y.*, 14 AD3d 195; *Sanabria v American Home Assur. Co.*, 68 NY2d 866; *County of Columbia v Continental Ins. Co.*, 83 NY2d 618; *Bretton v Mutual of Omaha Ins. Co.*, 110 AD2d 46; *Long Is. Light. Co. v Hartford Acc. & Indem. Co.*, 76 Misc 2d 832; *Security Mut. Life Ins. Co. of N.Y. v Rodriguez*, 65 AD3d 1.) III. IBM's shifting arguments in favor of coverage, by contrast, require rewriting of the plain language of the fiduciary policy, violate New York canons of insurance policy construction, contradict the Employee Retirement Income Security Act and controlling U.S. Supreme Court case law, and are contrary to all fiduciary liability insurance coverage case law. (*National Sec. Archive v United States Dept. of Defense*, 880 F2d 1381; *Cyprus Plateau Min. Corp. v Commonwealth Ins. Co.*, 972 F Supp 1379; *Payroll Express Corp. v Aetna Cas. & Sur. Co.*, 659 F2d 285; *American Home Assur. Co. v Merck & Co., Inc.*, 386 F Supp 2d 501; *First State Underwriters Agency of New England Reins. Corp. v Travelers Ins. Co.*,

803 F2d 1308; *Eagle Leasing Corp. v Hartford Fire Ins. Co.*, 540 F2d 1257; *Varity Corp. v Howe*, 516 US 489; *In re Lehman Bros. Sec. & ERISA Litig.*, 683 F Supp 2d 294; *Shaw v Delta Air Lines, Inc.*, 463 US 85; *Gabel v Richards Spears Kibbe & Orbe, LLP*, 615 F Supp 2d 241.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The question before the Court is whether the disputed language in an insurance policy extends coverage to alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) by defendant insureds, International Business Machines Corporation and the IBM Personal Pension Plan (collectively, IBM), acting in their capacity as the settlor of their employee benefit plans. We reaffirm fundamental principles of insurance contract interpretation and hold that the plain language of the policy does not cover such acts and, therefore, that the Appellate Division correctly held that plaintiff insurer Federal Insurance Company (Federal) is entitled to summary judgment and a declaration that it is not required to indemnify IBM in the manner requested.

Federal issued an excess insurance policy to IBM for the policy period from April 14, 1999 through April 14, 2000. The underlying policy (Zurich policy) was issued by Zurich American Insurance Company (Zurich) and it is limited to $25,000,000. A class action was filed against IBM, alleging that certain amendments to the benefit plans in 1995 and 1999 violated provisions of ERISA pertaining to age discrimination (*see Cooper v IBM Personal Pension Plan*, 2005 WL 1981501, 2005 US Dist LEXIS 17071 [SD Ill 2005], *revd in part* 457 F3d 636 [7th Cir 2006], *cert denied* 549 US 1175 [2007]). The parties to the *Cooper* action reached a settlement, which included amounts designated to cover those plaintiffs' attorneys' fees. IBM made those payments and then sought reimbursement from Federal, maintaining that the limits of the underlying Zurich policy had been exhausted and coverage of the excess Federal policy was thereby triggered. Federal commenced the instant suit against IBM, alleging eight causes of action and requesting a declaration that the Federal policy "provides no coverage for, or duty to indemnify, any amount paid by IBM and the Plan in settlement of the *Cooper* Action which represents attorneys' fees." The parties filed cross motions for summary judgment. The Supreme Court denied plaintiff Federal's motion and granted

IBM's motion. The Appellate Division reversed, holding that plaintiff was entitled to summary judgment (78 AD3d 763 [2d Dept 2010]). This Court granted IBM leave to appeal (16 NY3d 706 [2011]). We now affirm.

As is relevant to this appeal, the Federal policy is a "follow form" policy, meaning that it conforms to the terms and endorsements of the underlying Zurich policy (*see e.g. Jefferson Ins. Co. of N.Y. v Travelers Indem. Co.*, 92 NY2d 363, 369 [1998]). A reviewing court must decide whether, " 'afford[ing] a fair meaning to all of the language employed by the parties in the contract and leav[ing] no provision without force and effect' " (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 222 [2002], quoting *Hooper Assoc. v AGS Computers*, 74 NY2d 487, 493 [1989]), there is a "reasonable basis for a difference of opinion" as to the meaning of the policy (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured (*see Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 353 [1978] [recognizing "the general rule that ambiguities in an insurance policy are to be construed against the insurer"]). If not, then the policy will be found to be unambiguous, meaning that "the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (*Greenfield*, 98 NY2d at 569, quoting *Breed*, 46 NY2d at 355), and shall be applied as written, either in favor of or against coverage, depending entirely on the language used. In analyzing the meaning of an insurance policy provision, it is necessary to determine the "reasonable expectations of the average insured" (*Cragg v Allstate Indem. Corp.*, 17 NY3d 118, 122 [2011]).

The disputed language ("any breach of the responsibilities, obligations or duties by an Insured which are imposed upon a fiduciary of a Benefit Program by [ERISA]") appears in the first prong of the Zurich policy's definition of "Wrongful Act." The term "Wrongful Act" is defined, in its entirety, in endorsement No. 17 to the Zurich policy as

"1. any breach of the responsibilities, obligations or duties by an Insured which are imposed upon a fiduciary of a Benefit Program by the Employee Retirement Income Security Act of 1974, as

amended, or by the common or statutory law of the United States, or ERISA equivalent laws in any jurisdiction anywhere in the world;

"2. any other matter claimed against an Insured solely because of such Insured's service as a fiduciary of any Benefit Program; or

"3. any negligent act, error or omission in the Administration of any Benefit Program."

Contrary to the Supreme Court's holding in this case in which it granted IBM's motion for summary judgment, IBM was not alleged to have breached fiduciary duties in the underlying *Cooper* action. There is no dispute in this case that under *Lockheed Corp. v Spink* (517 US 882, 890 [1996] [holding that "(p)lan sponsors[1] who alter the terms of a plan do not fall into the category of fiduciaries"]), IBM was not acting as an ERISA fiduciary in taking the actions that gave rise to the allegations in the *Cooper* suit. A straightforward reading of the initial language of the first prong of the "Wrongful Act" definition is that it covers violations of ERISA by an insured acting in its capacity as an ERISA fiduciary. As such, the actions alleged in the *Cooper* suit are not covered by the Zurich policy.

The definition of "Wrongful Act" in the Zurich policy explicitly refers to ERISA and specifically to duties imposed on fiduciaries by ERISA. Therefore the only reasonable approach to determining whether the disputed language in the policy requires the coverage demanded by IBM in this action is to determine whether or not IBM was acting in its capacity as an ERISA fiduciary in amending the plans. Under *Lockheed*, IBM was acting as a plan settlor and not as a fiduciary when it made the changes to the benefit plans that allegedly violated ERISA. The policy language is clear that coverage requires that the insured be acting in its capacity as an ERISA fiduciary in committing the alleged ERISA violation. We conclude that the

---

1. Under ERISA, a plan sponsor is
   "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan" (29 USC § 1002 [16] [B]).

average insured would reasonably interpret the disputed language in the definition of "Wrongful Act" to mean that coverage is limited to acts of an insured undertaken in its capacity as an ERISA fiduciary.

We have considered and reject IBM's contentions to the contrary, certain of which we specifically address as follows. IBM maintains that the term "fiduciary" is undefined in the Zurich policy and therefore must be given its plain, ordinary meaning, which differs from the definition provided in ERISA. This argument appears to stem from the rule that "[t]he language employed in the contract of insurance must be given its ordinary meaning, such as the average policyholder of ordinary intelligence, as well as the insurer, would attach to it" (*Morgan v Greater N.Y. Taxpayers Mut. Ins. Assn.*, 305 NY 243, 248 [1953] [internal quotation marks and citation omitted]). Under IBM's reading of the policy, there is no requirement that the insured must have been acting in its capacity as an ERISA fiduciary in order for an act to be considered a "Wrongful Act" because the ordinary, plain meaning of the term "fiduciary" is not equivalent to the "artificial" definition of the term that appears in ERISA[2] (*see Mertens v Hewitt Associates*, 508 US 248, 255 n 5 [1993] [describing ERISA's definition of fiduciary as "artificial"]). IBM maintains that because it is alleged in the *Cooper* action to have violated certain ERISA provisions and because IBM is a fiduciary of the benefit plans (based on the plain meaning of the term),[3] the actions alleged in the *Cooper* action are

---

**2.** Regarding fiduciaries, the definition section of ERISA explains, in relevant part, that

"a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan" (29 USC § 1002 [21] [A]).

**3.** A fiduciary is "[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor" or "[o]ne who must exercise a high standard of care in managing another's money or property" (Black's Law Dictionary [9th ed 2009], fiduciary; *see also Roni LLC v Arfa*, 18 NY3d 846, 848 [2011] [holding that "(a) fiduciary relationship arises 'between two persons when one of them is under a duty to act

covered and therefore IBM is entitled to recover the attorneys' fees from Federal. In other words, IBM's actions would be covered by virtue of the fact that it was an insured and a plan fiduciary that allegedly violated certain ERISA provisions, regardless of the fact that, if the allegations are correct, it undoubtedly did so in its capacity as a plan settlor and not in its capacity as an ERISA fiduciary.

IBM misapplies a general principle of insurance policy construction—that terms take on their plain, ordinary meaning—and the result is a strained and implausible interpretation of the provision at issue. Contrary to IBM's argument, this does not amount to a prohibited implied exception to coverage (*see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984] [holding that "whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so 'in clear and unmistakable' language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (citations omitted)]). Rather, the disputed language in this case constitutes a clear expression of the parameters of coverage, easily understandable to the average insured. Moreover, if we were to endorse IBM's view, because the first prong of the "Wrongful Act" definition refers not only to duties imposed by ERISA (or foreign equivalents) but also to duties imposed by common law and statutory law, it might, if not limited to claims for breach of fiduciary duties, cover almost every lawsuit imaginable, a result we find to be unreasonable.

IBM further argues that if the disputed language is ascribed the meaning which this Court now concludes it has, then it would be unnecessary for the "Wrongful Act" definition to contain both the first and second prongs because each provision would have an identical meaning. This is not the case, as the two provisions clearly serve different functions. The first prong refers to "any breach of the responsibilities, obligations or duties by an Insured which are imposed upon a fiduciary of a Benefit Program by [ERISA] . . . or by the common or statutory law of the United States, or ERISA equivalent laws in any

---

for or to give advice for the benefit of another upon matters within the scope of the relation.' Put differently, '(a) fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other.' Ascertaining the existence of a fiduciary relationship 'inevitably requires a fact-specific inquiry' " (citations omitted)]).

jurisdiction anywhere in the world." The second prong reads as follows: "any other matter claimed against an Insured solely because of such Insured's service as a fiduciary of any Benefit Program." Upon comparing these two provisions, it becomes apparent that the first requires a breach of a duty imposed by ERISA (or foreign ERISA-equivalent) or by other United States common or statutory law, in order for coverage to be triggered, whereas prong two plainly contains no such requirement. Prong two would extend coverage to an insured's claims arising from liability incurred solely due to the insured's position as a fiduciary. For instance, if the insured is named in an action solely due to its status as a fiduciary, even where the action does not allege that the insured actually breached any fiduciary duties, and the action results in a settlement or a judgment against the insured, it is possible that Zurich and Federal would be liable for funds spent to settle the suit or pay the judgment.

Finally, IBM makes much of the fact that Federal revised its own policy language in 2002[4] and that certain policies in other cases use language similar to the revised Federal language (*see e.g. Cement & Concrete Workers Dist. Council Pension Fund v Ulico Cas. Co.*, 387 F Supp 2d 175, 181 n 2 [ED NY 2005], *affd* 199 Fed Appx 29 [2d Cir 2006] [" 'Wrongful Act' is defined in . . . the . . . policy to mean: 'any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the Insureds, either jointly or severally, *in the discharge of their fiduciary duties*, obligations or responsibilities, including the violation of any Federal fiduciary standards' " (emphasis added)]). It is simply not the case that because the challenged provision could have been worded differently, it is ambiguous and must be construed in IBM's favor. There are often many ways of effectively conveying the same meaning and the question is not simply whether the insurer could have phrased the provision differently. Rather, the issue is, in light of the reasonable expectations of the average policyholder, whether the provision, as written, is sufficiently clear and precise such that there is no room for *reasonable* disagreement about the scope of coverage. Because the Zurich policy is sufficiently clear on its face, we decline to speculate about Federal's choice to revise its own policy, as we are not persuaded that any such

---

4. According to IBM, the relevant language now reads as follows: "any breach of the responsibilities, obligations or duties imposed by ERISA upon fiduciaries of the Sponsored Plan *in their capacity as such fiduciaries*" (emphasis added).

change is material to our analysis of the disputed language in the Zurich policy.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.