14-3435-cv, 14-3474-cv
United States Fidelity and Guaranty Co. v. Fendi Adele S.R.L. et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

⸻

August Term 2015

(Argued: September 17, 2015      Decided: May 17, 2016)

Docket Nos. 14-3435-cv, 14-3474-cv

⸻

UNITED STATES FIDELITY AND GUARANTY COMPANY,

*Plaintiff-Counter-Defendant-Appellee,*

v.

FENDI ADELE S.R.L., FENDI S.R.L., FENDI NORTH AMERICA, INC.,

*Defendants-Counter-Claimants-
Appellants,*

BURLINGTON COAT FACTORY WAREHOUSE CORPORATION,
COHOES FASHIONS, INC.,

*Intervenors-Defendants-Counter-
Claimants-Appellants,*

ASHLEY REED TRADING, INC., SCOTT RESSLER, JAMES RESSLER,

*Defendants-Counter-Claimants.*

⸻

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Before:    SACK, CHIN, and DRONEY, *Circuit Judges.*

---

Appeal from a judgment of the United States District Court for the Southern District of New York (Berman, *J.*) in this insurance coverage case. A seller of merchandise was insured under liability insurance policies for any damages it was required to pay because of an "advertising injury." During the coverage period, it sold goods bearing counterfeit trademarks. In two underlying lawsuits, it was found liable for, *inter alia*, trademark infringement. The insurer brought this action below seeking a declaration that it owed no duty to indemnify the insured under the policies. The district court held that the policies did not cover the losses because they were not the result of an "advertising injury."

AFFIRMED.

---

ROBERT J. TRACY (Stefanie Robin Munsky, *on the brief*), Clifton Budd & DeMaria LLP, New York, New York, *for Plaintiff-Counter-Defendant-Appellee United States Fidelity and Guaranty Company*.

- 2 -

VICTOR GENECIN (Richard L. Mattiaccio and Corrine A. Irish, *on the brief*), Squire Patton Boggs, LLP, New York, New York, *for Defendants-Counter-Claimants-Appellants Fendi Adele S.R.L., Fendi S.R.L., and Fendi North America, Inc.*

GEORGE M. VINCI, JR. (David B. Picker, *on the brief*), Spector Gadon & Rosen, P.C., Philadelphia, Pennsylvania, *for Intervenor-Defendants-Counter-Claimants-Appellants Burlington Coat Factory Warehouse Corporation and Cohoes Fashions, Inc.*

CHIN, *Circuit Judge*:

In this case, a seller of merchandise was insured under two liability insurance policies for any damages it was obligated to pay because of an "advertising injury." During the coverage period, it sold goods bearing counterfeit trademarks. In two underlying lawsuits, it was found liable for, *inter alia*, trademark infringement. The insurer brought this action below seeking a declaration that it owed no duty to indemnify the insured under the policies. The district court held that the policies did not cover the losses because they were not the result of an "advertising injury." We agree, and we therefore affirm.

## BACKGROUND

### A.  *The Facts*

Defendants-Counter-Claimants-Appellants Fendi Adele S.R.L., Fendi S.R.L., and Fendi North America, Inc. (collectively, "Fendi") manufacture luxury handbags, shoulder bags, purses, wallets, and other items, and own associated federally-registered trademarks. Ashley Reed Trading, Inc. ("Ashley Reed") engages in the purchase and sale of off-price branded handbags and other luxury goods in New York and elsewhere, and Scott Ressler and James Ressler are its principals. Intervenors-Defendants-Counter-Claimants-Appellants Burlington Coat Factory Warehouse Corporation and its subsidiary Cohoes Fashions, Inc. (together, "Burlington") purchase clothing and other merchandise at wholesale and resell to the public at discounted prices. Burlington regularly purchased merchandise from Ashley Reed.

During the relevant time period, Ashley Reed sold counterfeit Fendi goods -- fashion accessories that were not Fendi products, but that displayed one or more Fendi trademarks and otherwise reproduced the appearance of genuine Fendi products -- to Burlington and others.

Plaintiff-Counter-Defendant-Appellee United States Fidelity and Guaranty Company ("USF&G") is an insurance company that provides commercial, property, and liability insurance. It issued three liability insurance policies to Ashley Reed between 2003 and 2006. Two of the policies are at issue in this case -- the 2003 Policy, effective February 8, 2003 through February 8, 2004, and the 2004 Policy, effective February 8, 2004 through February 8, 2006 (together, the "Policies").

The Policies provide that USF&G will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'advertising injury' to which this insurance applies." App. at 383, 964. "Advertising" is defined as "attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business." *Id.* at 400, 981. "Advertising injury" includes injury resulting from four specified "offenses," including: "c. The use of another's advertising idea in your 'advertising'; [and] d. Infringement of another's copyright, trade dress or slogan in your 'advertising.'" *Id.* at 400, 981.

**B.**     *The Underlying Lawsuits*

**1.**     *The First Action*

In January 2006, Fendi sued Ashley Reed for trademark counterfeiting, false designation of origin, and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c), and unfair competition and trademark dilution under New York law (the "First Action"). Fendi sought treble damages pursuant to 15 U.S.C. § 1117(b), on the ground that Ashley Reed intentionally used the Fendi trademarks with knowledge that they were counterfeit. The district court entered a permanent injunction, and awarded Fendi treble damages, prejudgment interest, fees, and costs.

On appeal, this Court affirmed, but vacated the district court's limitation of the damages award to counterfeits sold by Ashley Reed between 2005 and 2006 and remanded for a determination of whether damages should be awarded for the entire 2001 to 2006 period that Ashley Reed had infringed. On April 26, 2013, the district court entered on remand an award reflecting the amount of Ashley Reed's sales of counterfeit goods from 2001 to 2006, trebled, as well as attorneys' fees and costs, for a total monetary award of $34,650,885.91.

USF&G initially denied coverage for the First Action, by letter dated May 11, 2006. It later agreed, however, to pay for the defense of the action, subject to a reservation of rights letter, but continuing to deny indemnification.

**2.** *The Second Action*

In January 2006, Fendi separately sued Burlington, alleging the sale of counterfeit Fendi-branded merchandise that Burlington had purchased from Ashley Reed (the "Second Action"). Burlington asserted third-party claims against Ashley Reed. Fendi and Burlington settled as to Fendi's claims against Burlington, and on April 5, 2012, Burlington obtained a judgment requiring Ashley Reed to pay it damages, attorneys' fees, costs, and interest totaling $248,257.14. This amount reflected Burlington's profits from the sale of counterfeit goods it had purchased from Ashley Reed, as well as attorneys' fees, costs, and interest. *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 867 F. Supp. 2d 427, 434, 438 (S.D.N.Y. 2012). Unlike in the First Action, the damages here were not trebled. *Id.* at 433-34.

**C.** *The Instant Action*

On July 12, 2011, USF&G commenced this action below against Fendi and the Ashley Reed defendants, seeking a declaration that it owed no

duty under the Policies to indemnify Ashley Reed with respect to the First

Action. Fendi asserted a counterclaim seeking indemnification for the judgment

entered against Ashley Reed in the First Action. Burlington was given

permission to intervene to seek indemnification under the Policies for the

judgment entered against Ashley Reed in the Second Action. Cross-motions for

summary judgment followed.

On August 20, 2014, the district court granted summary judgment in

favor of USF&G. The district court held that the basis of Ashley Reed's liability

"was the sale -- not the advertising -- of counterfeit Fendi products," and

therefore that there was no basis for indemnification under the Policies. *U.S. Fid.*

*& Guar. Co. v. Ashley Reed Trading, Inc.*, 43 F. Supp. 3d 271, 278 (S.D.N.Y. 2014).

Judgment was entered accordingly and this appeal followed.

## DISCUSSION

**I.** *Applicable Law*

We review *de novo* a district court's grant of summary judgment,

"construing the evidence in the light most favorable to the non-moving party and

drawing all reasonable inferences in its favor." *SCR Joint Venture L.P. v.*

*Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (internal quotation marks omitted).

"Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the [Policies] de novo." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

The parties agree that New York law governs the interpretation of the Policies. In deciding whether an insurance policy requires an insurer to indemnify an insured's loss, we must first examine whether there is a "reasonable basis for a difference of opinion as to the meaning of the policy." *Fed. Ins. Co. v. Int'l Bus. Machs. Corp.*, 18 N.Y.3d 642, 646 (2012) (internal quotation marks omitted). If there is, "the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured." *Id.* This is because "New York follows the maxim of *contra proferentem* in insurance cases: where the plain language of a policy permits more than one reasonable reading, a court must adopt the reading upholding coverage." *VAM Check Cashing*, 699 F.3d at 732.

Under New York insurance law, the plain language of an insurance policy is construed "in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (quoting *Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 N.Y.2d 390, 398

(1983)); *see also Fieldston Prop. Owners Ass'n v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011). In construing a policy,

> [a] reviewing court must decide whether, affording a fair meaning to all of the language employed by the parties in the contract and leaving no provision without force and effect, there is a reasonable basis for a difference of opinion as to the meaning of the policy. If this is the case, the language at issue would be deemed to be ambiguous and thus interpreted in favor of the insured.

*Int'l Bus. Machs. Corp.*, 18 N.Y.3d at 646 (internal citations, alterations, and quotation marks omitted).

"The duty to indemnify is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy." *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 309 A.D.2d 22, 28 (1st Dep't 2003) (internal citations and quotation marks omitted); *see also Robbins v. Mich. Millers Mut. Ins. Co.*, 236 A.D.2d 769, 770 (3d Dep't 1997) ("While the duty to defend is generally measured against the allegations of the pleadings in the underlying action, the duty to indemnify is distinctly different, for it is determined by the actual basis of the insured's liability to [a] plaintiff.").

Several cases have construed advertising injury provisions under New York law.  The New York Court of Appeals has held that for a claimed advertising injury to be covered, it "must both arise out of an offense occurring in the course of the insured's 'advertising activities' and constitute one of the enumerated offenses." *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 303 (1989).  There, the court held that an insurer had no duty to defend under a policy that covered the "named insured's advertising activities," where the insured had been accused of manufacturing, importing, and selling plastic fasteners that infringed on another company's patents.  *Id.* at 301-03.  The insured argued that its "injury" was covered because the complaint against it alleged unfair competition, but the court held that because the alleged unfair competition involved the importation and sale of infringing products, this was "not injury arising out of Meyers' 'advertising activities.'"  *Id.* at 303.

In a similar case, the Second Department held that the insurer had no duty to indemnify under an "advertising injury" clause where the insured had been sued for trademark infringement.  *Am. Mfrs. Mut. Ins. Co. v. Quality King Distribs., Inc.*, 16 A.D.3d 607, 607-08 (2d Dep't 2005).  In the underlying action, the insured had been found liable for selling counterfeit shampoo bottles bearing an

unauthorized trademark. *Procter & Gamble Co. v. Quality King Distribs. Inc.*, 123 F. Supp. 2d 108, 118 (E.D.N.Y. 2000). The Second Department held that the injury was not an "advertising injury" and that therefore the insurer had no duty to indemnify. 16 A.D.3d at 608.

The sale of counterfeit goods bearing an unauthorized trademark was also at issue in *Century 21, Inc. v. Diamond State Insurance Co.*, 442 F.3d 79 (2d Cir. 2006). There, we held that because of the "'exceedingly broad' contours of an insurer's duty to defend," the insurer was obliged to defend the action where the policy contained an "advertising injury" clause and the complaint in the underlying action alleged that the insured "marketed, distributed and sold" the infringing goods. *Id.* at 81-83. We held that:

> a term as broad and multi-faceted as "marketing" may
> be construed to include activities apart from selling and
> distribution that are "within the embrace" of
> "advertising" as that term is used in the policy . . . .

*Id.* at 83. We did not reach the issue of the insurer's duty to indemnify, and we specifically noted the possibility that a point might be reached in the underlying proceedings when it became clear that the duty to defend ended because the alleged marketing injury was not covered under the policy. *Id.* at 83-84; *see also*

*Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 542

(S.D.N.Y. 2011), *aff'd*, 559 F. App'x 15 (2d Cir. 2014) (in advertising injury

coverage case, recognizing distinction between broad duty to defend and

narrower duty to indemnify).

## II.    *Application*

The Policies define "advertising" as "attracting the attention of others

by any means for the purpose of seeking customers or supporters or increasing

sales or business." App. at 400, 981. The Policies define "advertising injury" as

> injury arising out of one or more of the following
> offenses:
>
> a.     Oral or written publication of material that
> slanders or libels a person or organization or disparages
> a person's or organization's goods, products or services;
>
> b.     Oral or written publication of material that
> violates a person's right of privacy;
>
> c.     The use of another's advertising idea in your
> "advertising";
>
> d.     Infringement of another's copyright, trade dress
> or slogan in your "advertising."

App. at 400, 981. Fendi and Burlington do not argue that Ashley Reed's "injury"

arises out of the offenses enumerated in subsections (a) or (b), but they both

- 13 -

contend that subsection (c) applies, and Burlington also argues that subsection (d) applies.

We conclude that the district court correctly held that the Policies did not cover the injuries here, for subsections (c) and (d) require the use of another's "advertising idea" or "copyright, trade dress or slogan" in "*your advertising*," *id.* at 400, 981 (emphasis added), and there was no advertising by Ashley Reed here. Ashley Reed did not engage in any advertising of the counterfeit goods, and in its complaints in the underlying actions, Fendi did not allege that it suffered injury because of any advertising activities on the part of Ashley Reed. Rather, Fendi complained that it suffered injury because defendants sold counterfeit goods, and damages were awarded in both of the underlying actions based not on Ashley Reed's advertising activities but on its *sales* of counterfeit products. *Accord Meyers*, 74 N.Y.2d at 303 (holding that insured's liability for importing and selling infringing products was not advertising injury); *Am. Mfrs. Mut. Ins. Co.*, 16 A.D.3d at 608 (holding that insured's liability for selling counterfeit shampoo bottles bearing unauthorized trademark was not advertising injury).

Fendi and Burlington argue that Ashley Reed's use of the Fendi mark constituted advertising within the Policies' broad definition of "advertising" -- "attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business." App. at 400, 981. We reject the argument, in light of the well-settled proposition that insurance policies are to be construed "in light of 'common speech' and the reasonable expectations of a businessperson." *Belt Painting Corp.*, 100 N.Y.2d at 383 (quoting *Ace Wire & Cable Co.*, 60 N.Y.2d at 398). The parties could not have reasonably expected that the advertising injury coverage of the Policies would extend to the insured's sale of infringing goods (where the insured engaged in no advertising of the counterfeit goods) or that "advertising" would include the sale (without more) of counterfeit products. As a matter of common sense, there is a difference between the placement of a counterfeit brand label on a handbag and the act of soliciting customers through printed advertisements or other media. Here, the Fendi brand and logo were used as product identification (or, to be more precise, misidentification) rather than as advertisement. Clearly, Ashley Reed could not have reasonably expected that it would be indemnified for disgorgement damages based on the profits it improperly made from selling

goods that it knew bore a false designation of origin. *See XL Specialty Ins. Co. v. Loral Space & Commc'ns, Inc.*, 82 A.D.3d 108, 115 (1st Dep't 2011) (It is "well-established . . . that there is no insurance where an insured is forced to disgorge funds that it acquired wrongfully"); *see also Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 10 A.D.3d 528, 528 (1st Dep't 2004) ("The risk of being directed to return improperly acquired funds is not insurable. Restitution of ill-gotten gains does not constitute 'damages' or a 'loss' as those terms are used in insurance policies."); *J.P. Morgan Sec. Inc.*, 21 N.Y.3d at 334-35.

In short, we conclude that Ashley Reed's injuries arose not from its advertising activities, but from its sales of counterfeit products.

The Policies also contain a falsity exclusion, which provides an additional basis for denying coverage. The Policies exclude coverage for an advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." App. at 389, 1000. To the extent Ashley Reed's use of the Fendi logo on its handbags arguably constitutes advertising -- and, again, we conclude that it does not -- the falsity exclusion would be triggered, for the record is clear that Ashley Reed intentionally published the material (that is, placed the Fendi logo on its bags)

with knowledge that it would be selling goods bearing a false designation of origin. *See, e.g., Terk Techs. Corp.*, 309 A.D.2d at 31-32 (holding that insurer had no duty to defend or indemnify where insured intentionally sold counterfeit goods, as insured's conduct fell within "known falsity" exclusion); *A.J. Sheepskin & Leather Co. v. Colonia Ins. Co.*, 273 A.D.2d 107, 107 (1st Dep't 2000) (holding that insurer had no duty to defend or indemnify where insured intentionally sold infringing goods, as insured's conduct fell within "known falsity" exclusion).

We conclude that the district court did not err in denying coverage.

## *CONCLUSION*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

- 17 -