17-3327-cv
*7001 East 71st Street LLC v. Continental Casualty Company*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of June, two thousand eighteen.

Present:
> PIERRE N. LEVAL,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

─────────────────────────────────

7001 EAST 71ST STREET, LLC,

*Plaintiff-Appellant*,

v.                                                                                            17-3327-cv

CONTINENTAL CASUALTY COMPANY,

*Defendant-Appellee*.

─────────────────────────────────

For Plaintiff-Appellant:              MARK C. RIFKIN (Patrick Donovan, *on the brief*), Wolf Haldenstein Adler Freeman & Herz, LLP, New York, NY.

For Defendant-Appellee:            RICHARD J. SPROCK, Bruckmann & Victory, New York, NY (CNA Coverage Litigation Group, Radnor, PA, *on the brief*).

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dearie, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and **REMANDED**.

7001 East 71st Street LLC ("7001") appeals from a September 29, 2017 final judgment of the United States District Court for the Eastern District of New York (Dearie, *J.*), granting summary judgment to the Defendant-Appellee Continental Casualty Company ("Continental"). 7001's shopping center allegedly sustained damage during Superstorm Sandy due (at least in part) to rainwater. The district court concluded that the damage unambiguously fell within the "Windstorm Exclusion" of Continental's insurance policy, and thus dismissed 7001's complaint against Continental for indemnification. 7001 argues on appeal that the district court erred in its interpretation of the Windstorm Exclusion. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## A. Standard of Review

We review grants of summary judgment "de novo, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018) (quoting *Kazolias v. IBEWLU 363*, 806 F.3d 45, 49 (2d Cir. 2015)). "Because interpretation of an insurance agreement is a question of law, we [also] review the district court's construction of" Continental's policy—including the Windstorm Exclusion—"de novo." *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 149 (2d Cir. 2016) (quoting *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012)).

2

### B. The Windstorm Exclusion

Both parties agree that New York law applies in this dispute. In New York, "[t]he law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 68 (2d Cir. 2018) (quoting *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306 (2009)). We may enforce a policy exclusion only when it has "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 68–69 (quoting *Pioneer Tower*, 12 N.Y.3d at 307). "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced." *Id.* (quoting *Pioneer Tower*, 12 N.Y.3d at 307). Thus, our first step in interpreting whether an insured's loss falls within a policy exclusion is to "examine whether there is a 'reasonable basis for a difference of opinion as to the meaning of the policy.'" *Fendi Adele*, 823 F.3d at 150 (internal quotation marks omitted) (quoting *Fed. Ins. Co. v. Int'l Bus. Machs. Corp.,* 18 N.Y.3d 642, 646 (2012)).

This case turns on the proper interpretation of the Windstorm Exclusion, and we therefore begin by examining its language. *See In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016). The exclusion is located at Section B.15 of the policy. It is preceded by the opening language of Section B (*i.e.*, the "anti-concurrent cause" provision), which reads in relevant part: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded, regardless of any other cause or event that contributes concurrently or in any sequence to the loss." App'x at 584. The section then lists numerous items, including "[e]arth movement" (Section B.2), "[n]uclear reaction or radiation" (Section B.4), "[w]ar, including undeclared or civil

3

war" (Section B.5), and "[a]n explosion" (Section B.6). *Id.* at 584–85. Section B.15 reads: "A 'Breakdown' that is caused by windstorm or hail." *Id.* at 586. The policy defines a "Breakdown" as a "sudden and accidental direct physical loss to 'Covered Equipment,' which manifests itself by physical damage, necessitating its repair or replacement, unless such loss is otherwise excluded within this Coverage Form." *Id.* at 603.

We must "read[] the contract as a whole," *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014), and do so by placing words and phrases in their proper contexts, *see Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 44 (2d Cir. 2006). Accordingly, placed in context, the Windstorm Exclusion reads in relevant part as follows:

> We will not pay for loss or damage caused directly or indirectly by a "Breakdown" [*i.e.*, a sudden and accidental direct physical loss to "Covered Equipment," which manifests itself by physical damage] that is caused by windstorm.

*See* App'x at 584, 586, 603.

Notably, this exclusion does *not* simply read, "we will not pay for loss or damage caused directly or indirectly by windstorm."[1] This at once distinguishes the Windstorm Exclusion from, for example, the policy's Earth Movement Exclusion, which—read in context—states, "we will not pay for loss or damage caused directly or indirectly by earth movement," *id.* at 584, 585, and the Explosion Exclusion, which—read in context—states in relevant part, "we will not pay for loss or damage caused directly or indirectly by an explosion." *Id.* Indeed, if the Windstorm Exclusion

---

[1] *Contra, e.g.*, *Certain Interested Underwriters at Lloyd's v. Chabad Lubavitch of Greater Ft. Lauderdale, Inc.*, 65 So. 3d 67, 68 (Fla. Dist. Ct. App. 2011) ("We will not pay for loss or damage . . . [c]aused directly or indirectly by Windstorm or Hail . . . ."); *Chevis v. Mississippi Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 193 (Miss. Ct. App. 2011) ("We will not pay for loss or damage . . . [c]aused directly or indirectly by Windstorm or Hail . . . ."); *Windstorm Underwriters at Lloyds, Syndicate 242 v. Turtle Creek P'ship, Ltd.*, 716 F. Supp. 2d 633, 637 (S.D. Tex. 2010) ("[W]e will not pay for loss or damage caused by or resulting from Windstorm . . . ."); *Fla. Windstorm Underwriting v. Gajwani*, 934 So. 2d 501, 506 (Fla. Dist. Ct. App. 2005) ("We do not insure for loss caused directly or indirectly by . . . windstorm or hail."); *Purpura v. Cont'l Cas. Co.*, 143 A.D.2d 741, 742 (N.Y. App. Div. 1988) ("We will not pay for loss caused by, resulting from, contributed to or aggravated by . . . Windstorm.").

had simply read "we will not pay for loss or damage caused directly or indirectly by windstorm," it might well have barred 7001 from indemnification in this case. According to the facts that Continental has assumed as true for purposes of this appeal, a windstorm caused the roof of 7001's shopping center to tear, the roof tear allowed rainwater to seep in, and the rainwater damaged 7001's "Covered Equipment." Accordingly, the damage was caused directly or indirectly by windstorm. *See, e.g.*, *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 459 (S.D.N.Y. 2015) ("New York courts have interpreted [anti-concurrent cause provisions] to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that any of the concurrent or contributing causes of loss are excluded by the policy." (quoting *ABI Asset Corp. v. Twin City Fire Ins. Co.*, No. 96 Civ. 2067(AGS), 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997))), *aff'd*, 650 F. App'x 70 (2d Cir. 2016).

But Continental drafted the Windstorm Exclusion differently than the Earth Movement or Explosion exclusions. As noted above, the Windstorm Exclusion states in relevant part that Continental "will not pay for loss or damage caused directly or indirectly by a 'Breakdown' that is caused by windstorm." A person might perhaps read this sentence as an inartful way of simply saying, "Continental will not pay for loss or damage caused directly or indirectly by windstorm." However, a person might also perhaps read this sentence as saying, "if a 'Breakdown' that is caused by windstorm occurs, Continental will not pay for loss or damage that such a 'Breakdown' directly or indirectly causes." When the contractual definition of "Breakdown" is inserted in place of the word "Breakdown," the resulting exclusionary language reads: "We will not pay for loss or damage caused directly or indirectly by . . . [a] sudden and accidental *direct* physical loss to 'Covered Equipment' . . . that is caused by windstorm . . . ." App'x at 603, 808–10 (emphasis added). This language can be reasonably read to mean that the broad exclusion applies only when

5

a windstorm *directly* caused damage to Covered Equipment, and not when a windstorm indirectly damages Covered Equipment. This reasonable reading of the exclusion clause makes it at least ambiguous whether the clause applies. *See Fendi Adele*, 823 F.3d at 249.[2]

"Once a court concludes that an insurance provision is ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'" *Parks*, 472 F.3d at 43 (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275–76 (2d Cir. 2000)). The parties cite no such extrinsic evidence in their briefs on appeal, however, and we do not address the issue. We vacate the district court's judgment for further proceedings consistent with the analysis here.[3]

\*    \*    \*

For the foregoing reasons, the order of the district court hereby is **VACATED** and **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] Continental argues that 7001 has waived any argument that the Windstorm Exclusion is ambiguous. Even assuming *arguendo* that Continental is correct, however, the issue of whether an insurance policy exclusion is ambiguous is a "*threshold question of law* to be determined by the court," *Parks*, 472 F.3d at 42 (emphasis added) (quoting *Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir. 2005)), and we may exercise our discretion to address a claim raised for the first time on appeal when, "as here, 'the argument presents a question of law and there is no need for additional fact-finding,'" *Burns*, 890 F.3d at 94 n.4 (quoting *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004)).

[3] We decline Continental's invitation to affirm the district court's decision on other grounds; the district court may address the merits of Continental's arguments in the first instance on remand. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976).