20-1093-cv
*New York University v. Factory Mutual Insurance Company*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

> At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of July, two thousand twenty-one.

PRESENT:  JOHN M. WALKER, JR.
          JOSÉ A. CABRANES,
          RICHARD C. WESLEY,
              *Circuit Judges.*

_____

NEW YORK UNIVERSITY,

        *Plaintiff-Counter-Defendant-Appellant*,       20-1093-cv

        v.

FACTORY MUTUAL INSURANCE COMPANY,

        *Defendant-Counter-Claimant-Appellee.*

_____

**FOR PLAINTIFF-COUNTER-DEFENDANT APPELLANT:**

EDWARD FLANDERS (Joseph D. Jean, Jeffrey P. Metzler, Jay D. Dealy, *on the brief*), Pillsbury Winthrop Shaw Pittman LLP, New York, NY.

**FOR DEFENDANT-COUNTER-CLAIMANT-APPELLEE:** LINDA COBERLY (Harvey Kurzweil, Kelly A. Librera, George E. Mastoris, Matthew A. Stark, and Mark E. Rizik, Jr., *on the brief*), Winston & Strawn LLP, Chicago, IL and New York, NY.

Appeal from March 19, 2019 judgment of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be, and hereby is, **AFFIRMED**.

Plaintiff-Counter-Defendant-Appellant New York University ("NYU") filed this lawsuit against its insurer, Defendant-Counter-Claimant-Appellee Factory Mutual Insurance Company ("Factory Mutual"), bringing five declaratory judgment claims as to the scope and meaning of its 2011 insurance policy (the "2011 Policy") and one breach-of-contract claim. Factory Mutual filed a counterclaim. The parties filed cross-motions for summary judgment on NYU's declaratory judgment claims, and Factory Mutual also moved for summary judgment on NYU's claim for extra-contractual damages based on bad faith.[1] The District Court denied NYU's motion, granted Factory Mutual's motion, construing it as having sought summary judgment on NYU's complaint in its entirety, and entered judgment on March 19, 2019. NYU then moved pursuant to Federal Rules of Civil Procedure 59 and 60 to alter the judgment with respect to its breach-of-contract claim, which the District Court also denied. NYU timely appealed. We assume the parties' familiarity with the

---

[1] Joint App'x 231 (Factory Mutual's Mot. for Summary Judgment); *id.* at 271 (Factory Mutual's Mem. of Law in support of its Mot. for Summary Judgment) (arguing that "[t]o the extent NYU asserts, as part of its breach of contract claim, a claim for consequential damages based on [Factory Mutual]'s purported breach of its 'implied duties' of good faith and fair dealing, that claim fails").

underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

On appeal NYU challenges the District Court's decision granting summary judgment in favor of Factory Mutual on two of NYU's declaratory judgment claims as well as on NYU's breach-of-contract claim. This Court reviews a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in the non-movant's favor.[2] "Because interpretation of an insurance agreement is a question of law, we [also] review the district court's construction of [the policy] *de novo*."[3]

I.

NYU argues that the District Court erred in concluding that the 2011 Policy's additional coverages are unambiguously subject to the limit of liability for flood. We do not agree. "Insurance contracts are governed by the general rules of contract interpretation."[4] "[I]t is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed."[5] Thus, "[t]he language of a policy, when clear and unambiguous, must be given its plain and ordinary meaning."[6]

Here, the 2011 Policy's limit of liability section clearly states that "[l]imits of liability in an occurrence apply to the total loss of damage at all locations *and for all coverages involved*[.]"[7] Further, the 2011 Policy's section on additional coverages for insured physical loss or damages, such as costs incurred to remove debris from an insured location that remains as a direct result of insured physical loss or damage like a flood, expressly states that the additional coverages "are subject to the applicable limit of liability[.]"[8] The 2011 Policy's language thus makes plain that any costs incurred from flood that would qualify as additional coverages are part of, not in addition to, the $250 million limit of liability for loss or damage from flood.

Accordingly, the District Court did not err in concluding that the 2011 Policy's language unambiguously provided that additional coverages are subject to, not in addition to, the applicable limit of liability for loss or damage caused by flood.

---

[2] *See Natofsky v. City of New York*, 921 F.3d 337, 344 (2d Cir. 2019).

[3] *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 149 (2d Cir. 2016) (emphasis added).

[4] *Jin Ming Chen v. Ins. Co. of the State of Pennsylvania*, 36 N.Y.3d 133, 138 (2020).

[5] *Id.* (quoting *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).

[6] *Id.*

[7] Joint App'x 333 (emphasis added).

[8] Joint App'x 350.

II.

Next, NYU argues that the District Court erred in concluding that the 2011 Policy was ambiguous as to what property was covered by the $40 million flood sublimit of liability. We again do not agree. On summary judgment, the determination of whether a contract term is ambiguous "is a threshold question of law for the court."[9] "[A]mbiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement."[10]

The 2011 Policy states that the $40 million flood sublimit is "for property located at the NYU Hospital Center and School of Medicine located at 550-580 First Avenue, 401 & 435 E 30th Street, 317 & 400 E. 34th Street and 3010 FD Roosevelt Drive, New York, NY," the flood sublimit's "address clause."[11] The parties disagree as to whether this flood sublimit applies only to buildings with street addresses that fall within this "address clause."[12] In one literal reading of this "address clause" the flood sublimit applies exclusively to buildings with the specific street addresses. But reading the "address clause" as referring to properties beyond those buildings with street addresses literally specified therein is the only way to reconcile the flood sublimit with the 2011 Policy as a whole and, specifically, with the 2011 Policy's Schedule of Locations in Appendix A. Indeed, the Schedule of Locations provides several addresses for one of the three properties at issue, the Skirball Institute—some of which fall within the flood sublimit's "address clause" and some of which fall entirely outside the "address clause."[13] Because the text of the flood sublimit could be understood to be referring to all "property located at the NYU Hospital Center and School of Medicine" or to a subset of those buildings with street addresses that fall within the range of the "address clause," the flood sublimit cannot properly be characterized as "capable of only one reasonable interpretation."[14]

---

[9] *Walk-In Med. Ctrs., Inc. v. Breuer Cap. Corp.*, 818 F.2d 260, 263 (2d Cir. 1987).

[10] *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 83 (2d Cir. 2017) (quoting *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010)). In interpreting an insurance agreement, this Court must "read[ ] the contract as a whole," *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014), and do so by placing words and phrases in their proper contexts, *see Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 44 (2d Cir. 2006).

[11] Joint App'x 335.

[12] Specifically, NYU argues that three buildings—the Skirball Institute, Smilow, and HCC—are not covered by the flood sublimit because their street addresses are outside of the range set forth in the flood sublimit's "address clause."

[13] In the Schedule of Locations, the Skirball Institute is listed as having the following addresses: "540, 562, 564, 584 First Avenue," Joint App'x 418; "540, 562, 584 First Avenue," Joint App'x 421. One of Skirball's addresses is further listed for "Resident/Staff" in another part of the Schedule of Locations. Joint App'x 422.

[14] *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 129 2d Cir. 2001) (quoting *K. Bell & Assoc., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)).

4

The District Court thus did not err in concluding, at the threshold, that the flood sublimit was ambiguous as to whether it applied to only the buildings specified by the "address clause" or whether it included other buildings listed in Appendix A.

III.

NYU argues that the District Court erred in going on to conclude that the parties intended that the 2011 Policy's flood sublimit of liability to apply to more properties than those literally specified by the "address clause." We do not agree. "Once a court concludes that an insurance provision is ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'"[15]

Here, the extrinsic evidence indicates that the parties intended the flood sublimit in the 2011 Policy to operate the way it had in NYU's previous insurance policies with Factory Mutual—namely, to apply to properties identified by "Index 21374.00" in the Schedule of Locations.[16] Although NYU takes the position that the removal of the reference to Index 21374.00 in the 2011 Policy reflected the parties' mutual intent to remove the three disputed buildings from the $40 million flood sublimit (which would have the effect of increasing the flood limit of liability for those three buildings to $210 million), NYU adduced no evidence to this effect.[17] In contrast, NYU's broker sent to NYU a summary of the 2011 Policy, which included a chart that compared each limit of liability in the 2010 insurance policy (the "2010 Policy") to the limit of liability in the 2011 Policy. That summary chart identified the flood sublimit as "$40,000,000" in 2010 and "$40,000,000" in 2011—and the chart also described that particular sublimit as "Flood – SoM/ NYUMC Index 21374.00."[18] This

---

[15] *Parks*, 472 F.3d at 43 (quoting *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275–76 (2d Cir. 2000)).

[16] The flood sublimit was included for the first time in NYU's 2006 insurance policy (the "2006 Policy), which applied to a set of properties identified by "Index 21374.00" and which were set forth in Appendix A. The addition of the flood sublimit was prompted by NYU's completion of the Smilow building, one of the three disputed buildings, which was located near the East River. In NYU's 2006 Policy, Factory Mutual thus included a flood sublimit of $10 million that applied to the complex of which Smilow was a part in the 2006 Policy; in other words, Smilow was plainly included in the flood sublimit at its inception. This flood sublimit was raised to $25 million in NYU's 2008 insurance policy, and the 2009 insurance policy (the "2009 Policy") added an "address clause" for the flood sublimit while retaining the reference to Index 21374.00 alongside it. This inclusion of the "address clause" alongside the Index 21374.00 in the 2009 Policy supports an interpretation that the flood sublimit was intended to apply to all properties identified with Index 21374.00. The flood sublimit in NYU's 2010 insurance policy (the "2010 Policy") included the same "address clause" as well as the reference to Index 21374.00. The only change to the flood sublimit in the 2011 Policy from the 2010 Policy was the removal of the reference to "Index 21374.00" alongside the "address clause."

[17] Indeed, NYU's broker—after negotiating the 2011 Policy on NYU's behalf—explained to NYU that Factory Mutual was "unable at this time to provide additional limits for Flood…: the limit remains $40,000,000 in the annual aggregate." Confidential App'x 169.

[18] Confidential App'x 188.

5

contemporaneous summary, which showed both changes and similarities between the 2011 Policy and the 2010 Policy, is strongly indicative of the parties' intent that the flood sublimit in the 2011 Policy should continue to apply to a larger set of buildings than what the "address clause" literally identified, despite the removal of the reference to "Index 21374.00."[19]

The District Court did not err in concluding that, in the absence of NYU presenting evidence of the parties' intent otherwise, such that the material facts were in dispute, no reasonable jury could conclude that the parties intended to change how the flood sublimit operated in the 2011 Policy and that Factory Mutual was entitled to summary judgment on the issue.

## CONCLUSION

We have reviewed all of the other arguments raised by NYU on appeal and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**. The District Court's order entered March 3, 2020 denying NYU's motion to amend the judgment and/or for relief from the judgment under Federal Rules of Civil Procedure 59 and 60 is also **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[19] *See* Confidential App'x 188–190.