**CENTURY 21, INC., d/b/a/ Century 21 Department Stores, LLC, Plaintiff–Appellant,**

v.

**DIAMOND STATE INSURANCE COMPANY, Defendant— Appellee.**

**Docket No. 04–3362–CV.**

United States Court of Appeals, Second Circuit.

Argued: June 1, 2005.

Decided: March 21, 2006.

Joshua L. Mallin, Weg and Myers, P.C., New York, New York (Dennis T. D'Anto-nio, Jared Zola, of Counsel) for Plaintiff–Appellant.

Max W. Gershweir, New York, New York (Andrew P. Saulitis, of Counsel) for Defendant–Appellee.

Before: STRAUB, HALL, Circuit Judges, and KAPLAN, District Judge.[1]

HALL, Circuit Judge.

In this insurance coverage action, the District Court granted summary judgment to defendant-appellant Diamond Insurance Company ("Diamond"), ruling that Diamond had no duty to defend or indemnify plaintiff-appellant Century 21, Inc. ("Century") in a separate trademark infringement action brought against Century by Gucci America, Inc. For the reasons that follow, we vacate the judgment of the District Court and remand for further proceedings.

## BACKGROUND

### The insurance contract

Century engages in retail sales of clothing, shoes, appliances and accessories. Century purchased commercial general liability insurance coverage from Diamond for the period April 1, 1999—April 1, 2002. Under the insurance policy, Diamond is required to "pay those sums that [Century] becomes legally obligated to pay as damages because of," among other things, " '[a]dvertising injury' caused by an offense committed in the course of advertising [Century's] goods, products or services." An "advertising injury" is defined in the policy as one that arises from one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a per-

---

1. The Honorable Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

son's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

### The underlying action

In April 2002, Century was served with a summons and complaint in *Gucci America, Inc. v. Big M Inc.*, 2002 WL 31619039, an action filed in the United States District Court for the Southern District of New York. In its June 2002 amended complaint in that action, plaintiff Gucci America, Inc. ("Gucci") sought damages and injunctive relief for alleged trademark infringement and unfair competition by Century and others in violation of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* and Section 349 of the New York General Business Law. Specifically, Gucci alleged that without its consent, Century and others "commenced the distribution and sale" of items bearing unauthorized copies of the Gucci registered trademark with a resulting likelihood of consumer confusion. Central to the coverage dispute between Century and Diamond is Gucci's allegation that

> [Century] has marketed, distributed and sold goods in connection with a colorable imitation and simulation of the Gucci Trademarks with the express intent of causing confusion and mistake, of deceiving and misleading the purchasing public to buy and otherwise trade in its products in the erroneous belief that they were relying upon the reputation of

plaintiff Gucci; and in so doing, the defendant improperly appropriated the valuable trademark of plaintiff Gucci.

In a letter dated May 3, 2002, Century gave notice of the *Gucci* action to Diamond and sought confirmation that Diamond would provide a defense. In response, Diamond disclaimed coverage for a variety of reasons including its view that Gucci was not asserting any claim of "advertising injury" against Century within the meaning of the insurance policy.[2] After Diamond disclaimed coverage, Century retained counsel to defend the *Gucci* action.

### The present action

In July 2003, Century commenced this breach of contract and declaratory judgment action against Diamond, seeking recovery of attorneys fees that Century expended to defend the *Gucci* action and a declaration that Diamond was under a duty to defend Century in that action and to indemnify Century for any recovery by Gucci. Following limited discovery, Century moved for partial summary judgment on the issue of defense costs. Diamond cross-moved for a declaration that it had no duty to defend or indemnify, arguing that its obligations were not triggered by Gucci's allegations in the underlying suit and also asserting that a policy exclusion and late notice of claim deprived Century of coverage.

Acknowledging the considerable breadth of an insurer's duty to defend under New York law, the District Court nevertheless concluded that the facts and grounds alleged in Gucci's amended complaint did not bring the action within the protection to which Century was entitled under its poli-

---

2. Although Gucci and Century 21 agreed to a consent final judgment, terminating Century 21's involvement as a defendant in this action in March 2004, Century 21 had filed a third party complaint against Ashley Reed Trading, Inc. in October 2003. Apparently that action is ongoing, even though the district court docket sheet reveals no activity in this case since September 2004.

cy with Diamond. *Century 21, Inc. v. Diamond State Ins. Co.,* 2004 WL 1117897 (S.D.N.Y. May 18, 2004). The District Court reasoned first, that Gucci's allegations relating to the manufacture, distribution or sale of allegedly infringing goods did not constitute an offense that was "committed in the course of advertising" and second, that the mere selling of a product does not constitute advertising within the meaning of "advertising injury" under New York decisional law construing policy language analogous to the provision at issue in this case. *Id.* at \*\*3–4. In denying Century's motion and granting summary judgment in favor of Diamond, the District Court held that "Diamond is under no duty to defend or indemnify Century" in connection with the Gucci lawsuit and dismissed the action. *Id.* at \*5.

### DISCUSSION

On appeal, Century argues that Gucci's allegation of injury resulting from Century's "market[ing]" of alleged infringing goods may include potential grounds for relief that are covered under the policy as "[m]isappropriation of advertising ideas or style of doing business." We agree, and we write to provide additional guidance to the district courts in determining whether an insurer has a duty to defend based solely on examination of the pleadings in an underlying action. We conclude that vacatur is appropriate because the allegations in the complaint in the underlying action form a potential basis for recovery from Century that would be covered under the insurance policy. For that reason we do not reach other issues raised by the parties, but not yet addressed by the District Court, relating to interpretation of other policy terms, applicability of a policy exclusion, or late notice of claim.

The Court reviews the District Court's grant of summary judgment *de novo.*

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.* 363 F.3d 137, 143 (2d Cir.2004). If the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," disposition by summary judgment is appropriate. Fed. R.Civ.P. 56(c). Diamond and Century both moved the District Court for summary judgment.

The parties agree that their dispute is governed by New York law. The "exceedingly broad" contours of an insurer's duty to defend have been articulated clearly and repeatedly by the New York Court of Appeals. *See, e.g., Colon v. Aetna Life & Cas. Inc. Co.,* 66 N.Y.2d 6, 8, 494 N.Y.S.2d 688, 689, 484 N.E.2d 1040 (1985). Where allegations "fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be," there is a duty to defend. *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272 (1984). *See also Schwamb v. Fireman's Ins. Co.,* 41 N.Y.2d 947, 949, 394 N.Y.S.2d 632, 633, 363 N.E.2d 356 (1977) (even where claims are "predicated on [a] debatable or even untenable theory," there is a duty to defend if they may reasonably be found to fall within the terms of the policy, whether or not the insured ultimately is responsible for damages). Although the duty to defend will not be imposed through a "strained, implausible reading of the complaint 'that is linguistically conceivable but tortured and unreasonable,'" *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.,* 89 N.Y.2d 621, 635, 657 N.Y.S.2d 564, 569, 679 N.E.2d 1044 (1997) (quoting *New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1428 (2d Cir. 1991)), a defense obligation may be avoided only where there is "no possible factual or legal basis" on which an insurer's duty to indemnify under any provision of the

policy could be held to attach, *Servidone Constr. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441 (1985).

In determining whether a duty to defend exists, courts are to "compare the allegations of the complaint to the terms of the policy." *A. Meyers & Sons Corp. v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 302, 546 N.Y.S.2d 818, 820, 545 N.E.2d 1206 (1989). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Colon,* 66 N.Y.2d at 8–9, 494 N.Y.S.2d at 689, 484 N.E.2d 1040 (internal quotation marks omitted). As we have recognized,

> [T]he New York cases establish that "[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay,* there is no doubt that it is obligated to defend." In other words, a separate contractual duty to defend exists, and perdures until it is determined *with certainty* that the policy does not provide coverage.

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.,* 252 F.3d 608, 620 (2d Cir.2001) (quoting *Seaboard Sur. Co.,* 64 N.Y.2d at 310–11, 486 N.Y.S.2d at 876, 476 N.E.2d 272) (internal citations omitted).

▪ Cast in these terms, the question presented in this action is whether, "if liberally construed," Gucci's claim that Century "marketed" allegedly infringing goods, "is within the embrace of the policy." *Colon,* 66 N.Y.2d at 9, 494 N.Y.S.2d at 689, 484 N.E.2d 1040. The analysis is undertaken within the federal pleading and discovery framework applicable to Gucci's action against Century in the U.S. District Court. The simplified pleading standard of Fed.R.Civ.P. 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" In that regard, "[s]uch simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Viewed in this context, a term as broad and multi-faceted as "marketing" may be construed to include activities apart from selling and distribution that are "within the embrace" of "advertising" as that term is used in the policy to describe Century's coverage. Diamond's observation that " 'marketing' is a broad label encompassing a wide variety of activities relating to the sale of a product, including many that do not accord with the common use of advertising" recognizes implicitly, as we do explicitly, that the term also must be understood to refer to activities that accord with the common use of "advertising." Although "marketing" may refer simply to selling, "effective selling often involves extensive promotional activities, and when they occur they are all part of the 'marketing.' " *Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 187, 115 S.Ct. 788, 130 L.Ed.2d 682 (1995). The relevant question is not whether "marketing" may refer to something other than "advertising"; rather it is whether Gucci's use of the term suggests any possible factual or legal basis upon which Diamond could be obligated to indemnify Century under any provision of the policy. *Servidone,* 64 N.Y.2d at 424, 488 N.Y.S.2d at 142, 477 N.E.2d 441.

The possibility that Gucci's theory of liability may rest on facts relating to activities in the course of Century's advertising cannot be eliminated solely by examining pleadings in the *Gucci* proceeding. That

fact notwithstanding, this is not to say an obligation to defend necessarily continues through resolution of the underlying claim. *See Hugo Boss*, 252 F.3d at 621–22 (noting that if the duty to defend cannot be eliminated by examining the face of a pleading, an insurer may nevertheless "extricate itself early" through the use of discovery devices). Diamond's obligation to defend Century endures unless and until there is a point in the *Gucci* proceeding at which the factual nature of Gucci's allegation of injury resulting from "market[ing]" is clarified "with certainty" to exclude any issue relating to Century's conduct in the course of advertising. *Id.* at 620–22. Furthermore, at this stage of the *Gucci* proceedings, even if Diamond's duty to defend may have ceased, Diamond is not relieved of paying for Century's defense up to the point it would have been certain in that proceeding that no further defense was owed under the insurance contract. *Cf. id.* at 620 (noting that the contractual duty to defend—and thus to pay for that defense—continues "until it is determined *with certainty* that the policy does not provide coverage").

Based on the foregoing, the judgment of the District Court is hereby VACATED and the case is REMANDED for further proceedings consistent with this opinion.