11-4228-cv
*Bridge Metal Indus., LLC v. Travelers Indem. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of March, two thousand fourteen.

PRESENT:    JOHN M. WALKER, JR.,
            DEBRA ANN LIVINGSTON,
            CHRISTOPHER F. DRONEY,
                        Circuit Judges.

_____

BRIDGE METAL INDUSTRIES, LLC, JOSEPH MESSA, BLAISE FREDELLA,
                        *Plaintiffs-Appellees*,

-v-                                                No. 11-4228-cv

THE TRAVELERS INDEMNITY COMPANY,

                        *Defendant-Appellant*.

_____

                        WILLIAM T. CORBETT, JR., Drinker Biddle & Reath LLP, Florham Park, NJ, *for Defendant-Appellant*.

                        DENNIS T. SMITH (Sean Mack, *on the brief*), Pashman Stein, P.C., Hackensack, NJ, *for Plaintiffs-Appellees*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Travelers Indemnity Company ("Travelers") appeals from a judgment of the United States District Court for the Southern District of New York (Karas, *J.*). The district court granted summary judgment to Plaintiffs-Appellees Bridge Metal Industries, LLC ("Bridge Metal"), Joseph Messa, and Blaise Fredella in their action for a declaratory judgment establishing Travelers' duty, pursuant to an insurance contract, to defend lawsuits brought against Plaintiffs-Appellees for infringement of trade dress. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. *Background*

In October 2007, Bridge Metal purchased a commercial general liability policy (the "Policy") from Travelers, providing coverage from October 2007 to October 2008. The Policy, as amended by an endorsement titled "Web Xtend Liability – New York," stated that Travelers would indemnify Bridge Metal for "advertising injury" to which the Policy applied. Pertinently here, the Policy's definition of "advertising injury" includes the "[i]nfringement of copyright, title or slogan, provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such copyright, title or slogan."

Bridge Metal was sued in two separate lawsuits (the "underlying actions") by National Lighting Company, Inc. ("National"). The underlying actions alleged that National had contracted with Bridge Metal to manufacture lighting fixtures in mid-2005, and that the companies were engaged in discussions regarding a potential merger. As a result of both the manufacturing contract and the merger talks, National and Bridge Metal entered into an agreement in July 2005 that required Bridge Metal to maintain the confidentiality of National's trade secrets and other intellectual property. The merger talks were ultimately not fruitful, however, and under the terms of the

confidentiality agreement, Bridge Metal was required to destroy any confidential information it had obtained as a result of its transactions with National. National alleged that it discovered in late 2007 that Bridge Metal was "using National's designs, technical know-how, drawings and other intellectual property" to create and market its own light fixtures that were almost identical to National's. The fixtures produced by Bridge Metal allegedly copied National's designs and trade dress, alleged to be "recognized by [National's] customers, end users and others in the lighting industry as exceptionally aesthetic, superior in quality, and easy to assemble."

National filed lawsuits against Bridge Metal both in New York federal court (the "New York action") and New Jersey state court (the "New Jersey action"), making claims including trade dress infringement, unfair competition, false advertising, breach of contract, conversion, misappropriation, and related causes of action stemming from Bridge Metal's alleged use of National's designs. Both of the underlying actions were, for different reasons, ultimately dismissed. Subsequently, in 2010, Bridge Metal brought this action against Travelers for payment of its costs in defending against National's lawsuits.[1] The parties cross-moved for summary judgment, and Judge Karas granted judgment to Bridge Metal, holding that Travelers had a duty to defend Bridge Metal in both underlying actions. An amended judgment was entered on September 13, 2011, and Travelers appealed.

II. *Discussion*

"We review de novo a district court's ruling on cross-motions for summary judgment, in each case construing the evidence in the light most favorable to the non-moving party." *Ackerson*

---

[1] Bridge Metal originally filed this suit in New York Supreme Court, Westchester County, but the action was subsequently removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1332.

3

*v. City of White Plains*, 702 F.3d 15, 19 n.1 (2d Cir. 2012) (per curiam) (internal quotation marks omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the Policy de novo." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

Under New York insurance law, if there is a "reasonable basis for a difference of opinion as to the meaning of the policy," then the "language at issue [is] deemed to be ambiguous and thus interpreted in favor of the insured." *Fed Ins. Co. v. IBM Corp.*, 965 N.E.2d 934, 936 (N.Y. 2012) (internal quotation marks omitted). "[A]n 'ambiguous' word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001) (internal quotation marks omitted).

A. *Duty to Defend*

This case principally concerns an insurer's duty to defend its insured against a lawsuit that may be subject to indemnification by an applicable policy. Under New York law, an insurance company's duty to defend is "broader than its duty to pay." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quoting *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981)) (internal quotation mark omitted). "[T]he insurer must defend irrespective of ultimate liability" as long as the claims are "within policy coverage," even if the claims in the suit are "groundless, false or fraudulent." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d

4

441, 444 (N.Y. 1985); *see also A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 545 N.E.2d 1206, 1208 (N.Y. 1989) ("If the facts alleged raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend."). As we have held:

> Although the duty to defend will not be imposed through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable, a defense obligation may be avoided only where there is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach.

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82-83 (2d Cir. 2006) (citations and internal quotation marks omitted).

This Court recently considered another appeal arising from an insurance contract with terms like those in the Policy issued by Travelers in this case. *See CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71 (2d Cir. 2013). *CGS Industries* also involved the interpretation of an insurance contract covering "advertising injury," which included "[i]nfringement of copyright, title or slogan." *Id.* at 75. There, we determined that the term "title" was not broad enough to trigger an insurance company's duty to indemnify in a case arising from the alleged infringement of a clothing company's distinctive "rear pocket stitching design." *Id.* at 75, 79-80. But despite the fact that the "vast majority of federal cases" correctly understood that "title" did not encompass trademarks, we nonetheless held that the insurer had a duty to defend in *CGS Industries* due to a "handful" of cases that "define[d] title in a way that could arguably include a design or symbol similar to the pocket stitching at issue here." *Id.* at 79-81. Thus, though the "reasoning of these cases [was] faulty," there was "enough legal uncertainty," preceding *CGS Industries*, that created an "at least temporary [ ] duty to defend." *Id.* at 81 (quoting *Hugo Boss*, 252 F.3d at 622).

*CGS Industries* guides our analysis of the duty to defend in this case. As noted above, the underlying actions here stemmed from Bridge Metal's alleged infringement of National's trade dress and other proprietary information – including the distinctive design of the lighting fixtures produced by National. We conclude that the prior confusion in the case law regarding the meaning of the term "title" – which some courts extended to "arguably include a design or symbol," *id.* at 80 – encompassed confusion over not only trademarks, but also the related concept of trade dress. We have previously defined trade dress as "the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006) (quoting *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991)) (internal quotation marks omitted). Furthermore, trade dress and trademarks serve a similar function, in that they both denote the source of a product. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:1 (4th ed. 2005). Thus, because there was "a legal uncertainty as to insurance coverage," *Hugo Boss*, 252 F.3d at 622 (italics omitted), due to doctrinal confusion regarding the concept of "title" at the time of the Policy, Travelers's duty to defend the underlying actions was triggered.

B. *Advertising Injury*

Travelers would also be relieved of its obligation to defend Bridge Metal if the underlying actions did not allege "advertising injury." Under New York law, "[t]he duty of a liability insurer to defend an action brought against an insured is determined by the allegations in the complaint." *A. Meyers & Sons*, 545 N.E.2d at 1208. To trigger the "duty to defend, the claimed injury must both arise out of an offense occurring in the course of the insured's 'advertising activities' and constitute one of the enumerated offenses." *Id.* "[W]here an advertising injury is alleged, the relevant

6

causation issue with regard to insurance coverage is not whether the injury could have taken place without the advertising, but whether the advertising did in fact contribute materially to the injury." *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 248 (2d Cir. 2002) (emphasis and internal quotation marks omitted). A complaint does not claim an advertising injury if it alleges only the manufacture, importation, and sale of infringing goods without claiming harm arising from advertising, and where it seeks relief "without reference to preventing any type of false, misleading or injurious advertising." *A. Meyers & Sons*, 545 N.E.2d at 1208-09.

The Policy here defined "[a]dvertising injury" as one "caused by an offense committed in the course of advertising your goods, products or services." The relevant offenses included slander, libel, appropriation of likeness, false light, publicizing a person's private life, or (as noted previously) the "[i]nfringement of copyright, title or slogan." Accordingly, both of the underlying actions alleged advertising injury. As the district court held, the complaints "allege that Plaintiffs specifically copied National's distinctive trade dress to make consumers think that Bridge Metal's light fixtures originated from, or were connected with, National's and marketed the fixtures to the public with that purpose in mind." Both complaints allege that Bridge Metal used information it misappropriated from National to "market" and "advertise" lighting fixtures, and each requests an injunction prohibiting Bridge Metal from "marketing" or "advertising" lighting fixtures that infringed on National's intellectual property. *See Century 21*, 442 F.3d at 83 (holding that the term "marketing" can be "construed to include activities apart from selling and distribution that are 'within the embrace' of 'advertising' as that term is used in the policy" for purposes of advertising injury (quoting *Colon v. Aetna Life & Cas. Ins. Co.*, 484 N.E.2d 1040, 1041 (N.Y.1985))). National's New York action also contains specific counts alleging that Bridge Metal's conduct

7

constituted "false advertising." The advertising and marketing of Bridge Metal's products constituted at least a part of the harm that National allegedly suffered, and thus, the district court correctly concluded that the underlying actions alleged advertising injury.

C. *Policy Exclusion*s

Travelers also asserts that two exclusions from the policy excuse it from coverage of Bridge Metal's defense costs. We disagree. The first of these is a breach of contract exception, which states that the Policy does not apply to "'[a]dvertising injury' . . . arising out of a breach of contract." Under New York law, such an exclusion is governed by a "but for" test, such that the exclusion applies "only if the advertising injury suffered . . . would not exist *but for* the breach of contract . . . . [O]nly then would [the insurer] not be obligated to indemnify [the insured]." *Hugo Boss*, 252 F.3d at 623 n.15 (emphasis in original) (citing *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 668 N.E.2d 404 (N.Y. 1996)). We conclude that it is at least a plausible interpretation that but-for causation is lacking in this case, since National's right to protect its trade dress – which antedated the confidentiality agreement with Bridge Metal – could be infringed regardless of the contract. The "operative act giving rise to any recovery," *Mount Vernon*, 668 N.E.2d at 406, was the alleged copying of National's designs, not the breach of the confidentiality agreement.[2] Accordingly, we reject the argument that the breach of contract exclusion nullifies Travelers's duty to defend.

---

[2] In *Hugo Boss*, we likewise concluded that a similar exclusion did not preclude the duty to defend in a trademark suit. 252 F.3d at 623 n.15. Because the intellectual property rights at issue preceded and were independent of the contract, an advertising injury due to the infringement of those rights could have arisen without a breach of the contract. *Id.* While we acknowledged that this was not the only reading of the exclusion, we held that "because this reading is, at the very least, a possible one, sufficient uncertainty as to the applicability of the breach of contract exclusion existed so that it could not serve to eliminate [the insurer's] duty to defend." *Id.*

8

The second exclusion precludes coverage for a "knowing violation": that is, advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict . . . 'advertising injury' . . . ." Here, the New York action alleged violations of section 43(a) of the Lanham Act, which do "not require proof of intent to deceive." *CGS Indus.*, 720 F.3d at 83 (internal quotation marks omitted). The New Jersey complaint alleged claims in conversion, a cause of action which likewise does not require proof of intentional harm. *See Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009) ("Conversion does not require that defendant have an intent to harm the rightful owner . . . ."). Because "at least one of the [underlying] claims . . . did not require intent, [the insurer] was required to defend the entire action." *CGS Indus.*, 720 F.3d at 83.[3] Accordingly, the "knowing violation" exception is inapplicable.

* * *

---

[3] As in *CGS Industries*, we distinguish the two New York cases cited by the insurer where the "insured had not shown or could not show, given the nature of the offense, that its infringing conduct was unintentional." 720 F.3d at 83 n.12. Unlike in those cases, the complaints in the underlying actions here do not allege that Bridge Metal created "low-quality knock-off" imitations of National's products and marketed the fixtures as genuine National fixtures, nor that Bridge Metal was a "serial infringer." *See id.* (citing *Atl. Mut. Ins. Co. v. Terk Techs. Corp.*, 763 N.Y.S.2d 56, 64 (App. Div. 2003); *A.J. Sheepskin & Leather Co. v. Colonia Ins. Co.*, 709 N.Y.S.2d 82, 83 (App. Div. 2000)). We note also that, again distinct from the case before us, the courts in both of the New York cases had the benefit of and relied on facts established in the lawsuits underlying the insurance case – from a bench trial and an evidentiary hearing – that confirmed allegations of the complaint. *See Terk Techs. Corp*, 763 N.Y.S.2d at 59 (stating that a federal district judge had found, after a bench trial, "that Terk intentionally, willfully, knowingly, surreptitiously and fraudulently passed off counterfeit goods of inferior quality as [the plaintiff's] authentic . . . goods"); *A.J. Sheepskin*, 709 N.Y.S.2d at 83 ("[T]here was an express finding, after a full evidentiary hearing . . . , that, in accordance with the allegations of the complaint, A.J. Sheepskin was a 'serial infringer' that had 'deliberately sought to confuse the public' by selling goods nearly identical to [the plaintiff's].").

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk