16-1446-cv
High Point Design, LLC v. LM Insurance Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: May 8, 2017                                    Decided: December 19, 2018)

Docket No. 16-1446-cv

_____

HIGH POINT DESIGN, LLC,

*Plaintiff-Appellee,*

v.

LM INSURANCE CORPORATION, LIBERTY MUTUAL FIRE INSURANCE
COMPANY, LIBERTY INSURANCE CORPORATION,

*Defendants-Appellants.*[1]

_____

Before: NEWMAN, POOLER, and HALL, *Circuit Judges*.

High Point Design, LLC sought a defense from its insurer pursuant to the

terms of insurance policies providing coverage for advertising injuries. The

_____

[1] The Clerk of the Court is directed to amend the caption as above.

insurers, LM Insurance Corporation, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty"), refused to provide a defense on the ground that the counterclaim at issue in the underlying litigation alleged only injury for trade dress infringement, not advertising injury. The United States District Court for the Southern District of New York (Katherine B. Forrest, *J*.) granted High Point's motion for partial summary judgment and found Liberty owed High Point a defense based on allegations in the counterclaim that High Point "offered" the infringing items for sale. We agree with the district court that as used in the counterclaims and with the additional context of the discovery demands in the underlying litigation, the term "offering for sale" includes advertising, such that Liberty owes High Point a defense. However, Liberty's duty to provide a defense did not arise until High Point provided Liberty with discovery demands served in the underlying litigation. We therefore vacate the district court's award of damages, and remand so that the district court can determine the amount of legal fees incurred from that point forward.

Affirmed in part, vacated and remanded in part.

Judge Newman concurs in part and in the result, and files a separate concurring opinion.

_____

MARSHALL T. POTASHNER, Jaffe & Asher LLP (Bension D. DeFunis, *on the brief*), New York, N.Y., *for Defendants-Appellants LM Insurance Corporation, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation.*

RICHARD S. SCHURIN, Stern & Schurin LLP (Steven Stern, *on the brief*), Garden City, N.Y., *for Plaintiff-Appellee High Point Design, LLC.*

POOLER, *Circuit Judge*:

High Point Design, LLC sought a defense from its insurer pursuant to the terms of insurance policies providing coverage for advertising injuries. The insurers, LM Insurance Corporation, Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation (collectively, "Liberty"), refused to provide a defense on the ground that the counterclaim at issue in the underlying litigation alleged only injury for trade dress infringement, not advertising injury. The United States District Court for the Southern District of New York (Katherine B.

Forrest, *J.*) granted High Point's motion for partial summary judgment and found Liberty owed High Point a defense based on allegations in the counterclaim that High Point "offered" the infringing items for sale. We agree with the district court that as used in the counterclaims and with the additional context of the discovery demands in the underlying litigation, the term "offering for sale" includes advertising, such that Liberty owes High Point a defense. However, Liberty's duty to provide a defense did not arise until High Point provided Liberty with discovery demands served in the underlying litigation. We therefore vacate the district court's award of damages, and remand so that the district court can determine the amount of legal fees incurred from that point forward.

## BACKGROUND

As relevant here, High Point sells and distributes footwear on a wholesale basis. From November 2008 through November 2012, High Point was the named insured on a series of commercial general liability insurance and umbrella policies issued by Liberty (the "Policies"). At issue here is coverage under a

commercial lines policy, No. YV5-Z21-093433-020 (the "CGL"), and an umbrella policy, No. TH2-Z21-093433-030. The CGL provides in relevant part that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

App'x at 559.

The CGL defines "personal and advertising injury" to include an "injury . . . arising out of . . . [i]nfringing upon another's copyright, trade dress or slogan in [High Point's] 'advertisement.'" App'x at 535. "Advertisement" is defined as "a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." App'x at 534. The CGL excludes coverage for:

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

App'x at 483, 534.

The umbrella policy also covers an "advertising injury," defined as an "injury arising out of paid announcements in the print or broadcast media resulting in . . . [i]nfringement of copyright, title or slogan." App'x at 601. The umbrella policy excludes "advertising injury arising out of . . . [p]atent infringement." App'x at 638.

One of the items High Point manufactures and distributes is the Fuzzy Babba slipper, which it sold through various retailers, including Meijer, Inc., Sears Holding Corp., and Wal-Mart Stores, Inc. (together, the "Retailers"). *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 635 (Fed. Cir. July 30, 2015). Buyer's Direct Inc. also manufactures slippers, including the Snoozie, on which it holds a design patent. *Id.* at 634-35. Buyer's Direct sent High Point a

6

cease-and-desist letter alleging that the Fuzzy Babba slipper infringed on the Snoozie's design patent. *Id.* at 635. High Point responded by seeking a declaratory judgment that the Fuzzy Babba's design does not infringe on Buyer's Direct's design patent, and that the patent covering the Snoozie is either invalid or unenforceable. *Id*. Buyer's Direct filed a counterclaim for patent and trade dress infringement. *Id.* It also filed a third-party complaint against the Retailers alleging that the Retailers infringed the Snoozie's patent and trade dress by selling Fuzzy Babba slippers. *Id.*

As is relevant to High Point's claims for insurance coverage, Buyer's Direct's counterclaim alleges that:

> Counterclaim Defendant High Point has infringed and is still infringing the '183 Patent by manufacturing, importing, selling and/or *offering for sale* the High Point Slipper Socks, and/or other footwear that embodies the subject matter claimed in the '183 Patent.

App'x at 294 (emphasis added). Buyer's Direct's discovery demands sought advertising and marketing materials. Document Request No. 22 sought "[a]ll advertising, marketing, promotional and/or descriptive documents . . . referring and/or relating to High Point's Accused Products." App'x at 330. Interrogatory

No. 5 sought the identity of the person "at High Point most knowledgeable about and/or most responsible for . . . the advertising, marketing and/or promotion of High Point's Accused Products . . ." App'x at 315-316. Buyer's Direct also noticed the deposition of the person at High Point with knowledge of "[a]ll advertisements, marketing statements, sales or marketing presentations, and correspondence with customers or potential customers of High Point relating to High Point's sale or attempted sale of the Accused Products." App'x at 342. Buyer's Direct's discovery demands were provided to Liberty.

After High Point was served with Buyer's Direct's counterclaims, it notified Liberty of the claim and sought a defense and indemnification. On March 23, 2012, Liberty sent High Point a letter stating that after investigation, it disclaimed coverage. High Point then commenced this litigation, seeking coverage under the insurance policies for the costs of defending against Buyer's Direct's counterclaim.

The parties engaged in discovery, and in January 2015 High Point moved for partial summary judgment. The district court granted the motion on March 2, 2015, finding Liberty owed High Point a duty to defend under both the

commercial line and umbrella policies. In a decision handed down from the bench, the district court found that the counterclaims' reference to an "offering for sale" asserted a claim for an advertising injury within the meaning of the policies. App'x at 1045. The district court reasoned that the "phrase 'offering for sale' . . . is equivalent to something that could be broadly construed as promoting or advertising." *Id.* By stipulation dated April 25, 2016, Liberty and High Point agreed that High Point's damages totaled $1.35 million. The district court entered a final judgment awarding High Point $1,657,450.44, which included an earlier payment made by Liberty to High Point. This appeal followed.

## DISCUSSION

"We review the district court's grant of partial summary judgment *de novo.*" *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 286 (2d Cir. 2000). "Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the [policies] de novo." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

9

We begin with the language of the policy. Paragraph (1)(a) of the CGL obligates Liberty to pay those sums that its insured, High Point, becomes legally obligated to pay for "'personal and advertising injury' to which this insurance applies." App'x at 559. Paragraph V(2)(b)(7) of the CGL defines "personal and advertising injury" to include injury arising out of the "offense" of "infringing upon another's copyright, *trade dress* or slogan in your 'advertisement.'" App'x at 535 (emphasis added).[2]

However, the exclusion provision of the CGL excludes "advertising injury arising out of the infringement of copyright, patent, *trademark*, trade secret or other intellectual property rights." App'x at 483 (emphasis added). By excluding advertising injury out of trademark rights, the policy implicitly excludes injury arising out of trade dress infringement, because trade dress is one form of product identification included within the definition of a trademark.

[2] It appears Liberty changed its form liability policy to explicitly include "trade dress" infringement occurring "in" an advertisement. The current phrase "copyright, trade dress or slogan" replaced the phrase "copyright, title or slogan" in Liberty's previous liability policy, which was before this Court in *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 245 & App'x 35 ¶ V(a)(d)(2d Cir. 2002). In Liberty's umbrella policy, also at issue here, "advertising injury" is still defined as "[i]nfringment of copyright, title or slogan." App'x at 601.

*See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 206 (2000)(citations omitted). Then, in the convoluted structure apparently favored by insurance companies, the exclusion has its own exclusion: "However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." *Id*. This secondary exclusion from the primary exclusion was apparently inserted to make clear that the primary exclusion does not exclude coverage for trade dress infringement in an advertisement, which Paragraph V(2)(b)(7) affirmatively sets forth.[3]

As a result, Liberty does not cover claims that a product or the packaging of a product sold by High Point infringes on the trade dress of another company's product but does cover claims that a High Point advertisement containing a photo or drawing of High Point's product infringes the trade dress of another company's product. It strikes us as odd that there is no coverage for liability arising from trade dress infringement caused by an insured's product or

---

[3] The exclusion provision in Liberty's policy considered in the *Bigelow* litigation excluded " 'advertising injury' arising out of . . . (4) patent infringement or securities fraud." *Bigelow*, 287 F.3d at 245 & App'x at 35. Since that provision did not exclude any form of trademark infringement, it had no need to exclude from the exclusion trade dress infringement in an advertisement.

11

its packaging, but there is liability arising from trade dress infringement caused by a photo or drawing of the same product in an advertisement. Nevertheless, that is the distinction the policy makes, and we are obliged to accept it. So the issue becomes whether, in the underlying suit, High Point faced a claim of advertising injury arising from trade dress infringement in one or more of its advertisements.

Four basic principles of New York insurance law guide our analysis. First, the duty of an insurer to defend its insured is "exceedingly broad" and far more expansive than the duty to indemnify its insured. *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648 (1993) (citation omitted). Second, the insurer's duty to provide a defense is invoked "whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). Third, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997). Finally, insurers are to look beyond the four corners of the

12

complaint in deciding whether there is coverage. *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991). "[A]n insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint." *Id.* at 68.

Thus, the insurer may deny its insured a defense "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985) (internal quotations marks and brackets omitted). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002).

Whether Liberty owes High Point a defense turns on the meaning of what constitutes an "advertising injury." "[T]here is much confusion in the caselaw concerning when an 'advertising injury' is 'caused' by advertising within the meaning of standard business insurance policies." *R.C. Bigelow*, 287 F.3d at 247 (citation omitted). "[C]ourts are to compare the allegations of the complaint to

13

the terms of the policy." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (internal quotation marks omitted). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Colon v. Aetna Life & Cas. Inc. Co.*, 66 N.Y.2d 6, 8-9 (1985) (citation omitted).

Here, Liberty argues that the district court erred in finding Liberty owed Hight Point a duty to defend. We disagree, and find that the "offer[] for sale" alleged in the counterclaim, coupled with the discovery demands seeking advertising materials, triggered Liberty's duty to defend.

Viewed broadly as required under New York law, an "offer for sale" extends to advertising. We determined in *Century 21* that "marketing," as used in a similar insurance agreement, extends to advertising. 442 F.3d at 83. "Marketing" includes activities that are not advertising, but "the term also must be understood to refer to activities that accord with the common use of 'advertising.'" *Id.* Similarly, while the term "offer for sale" includes activities that are not advertising, it also includes advertising activity. Indeed, the purpose of most advertising is to "offer for sale" various goods and services. The CGL at

14

issue here recognizes this, defining "Advertisement" to mean "a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." App'x at 534. The umbrella policy covers an "injury arising out of paid announcements in the print or broadcast media resulting in . . . [i]nfringement of copyright, title or slogan." App'x at 601.

The phrase "offering for sale" may have multiple meanings, some of which do not implicate advertising activity. For example, simply placing an item on the counter with a sign indicating its price is an "offer for sale" even though it is not advertising. Liberty argues that High Point's advertising could not have caused any advertising injury within the meaning of the policies because the advertising simply displayed the allegedly infringing product. But Buyer's Direct's claim that it was injured by High Point's "offering for sale" the infringing slippers suffices to demonstrate that an advertising injury may have resulted from the use of the infringing trade dress in advertisements. The slippers were not sold

15

encased in packaging of any kind—they were simply displayed as slippers.[4]

Displaying the infringing trade dress in an advertisement is an advertising injury for which damages can be awarded where, as here, it is a means by which the alleged infringer creates customer confusion and trades on the offended party's goodwill and protected designs. *See R.C. Bigelow*, 287 F.3d at 248.

*Bigelow* is particularly instructive on this point. The complaint there arose under Connecticut law, which like New York law takes a liberal position with regards to an insurer's duty to defend. *See id*. at 245-46 (noting that under Connecticut law, "[t]he duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, and the surrounding facts"). The insured's alleged infringement primarily constituted tea packaging with trade dress "confusingly similar" to another company's packaging. *Id.* at 244. Our Court held that the complaint pled an advertising injury within the meaning of the policy where it stated that the insured copied the plaintiff's trade dress and displayed it in published advertisements.  In seeking a defense from its insurer, "Bigelow contend[ed] that

---

[4] For examples, see attached Appendix.

Celestial's claims of trade dress infringement [fell] within the scope of the advertising injury provision because the allegedly infringing trade dress was depicted in Bigelow's published advertisements." *Id.* at 246. Here, the slippers were displayed in advertisements as they were sold: without packaging, such that the trade dress was used to offer the products for sale in the print advertisements, just as the allegedly infringing packaging was displayed in the ads at issue in *Bigelow*.

Even if the counterclaims, standing alone, did not place Liberty on notice of its duty to defend, the discovery demands seeking information related to the paid advertisements place High Point's advertising squarely at issue. New York does not rest an insurer's duty to defend solely on the language of the complaint. *See Fitzpatrick*, 78 N.Y.2d at 68. The fact that the counterclaim does not set forth a claim labeled "advertising injury" is not a barrier to an insured seeking coverage for a defense under New York law. *See id.* at 70 (rejecting "four corners of complaint" rule and holding that an insurer must provide a defense "where, notwithstanding the complaint allegations, underlying facts made known to the insurer create a reasonable possibility that the insured may be held liable for

some act or omission covered by the policy" (internal quotation marks omitted)). Buyer's Direct's discovery demands sought information related to advertisements and are extrinsic evidence that supports interpreting the counterclaim's allegation of "offering for sale" to include a claim for damages due to advertising.

Liberty relies on *Feldman Law Group, P.C. v. Liberty Mutual Ins. Co.*, but that reliance is misplaced. 476 F. App'x 913 (2d Cir. 2012) (summary order). Whatever persuasive value *Feldman* offers here is negated by the fact that *Feldman* is decided under Pennsylvania law, which limits the duty to defend to claims reasonably implied in the "four corners" of the complaint. *Id*. at 915-17 ("Under Pennsylvania law—which the parties agree applies in this case—an insurer's duty to defend and indemnify must be determined solely from the language of the complaint against the insured."(internal quotation marks and brackets omitted)). Because Pennsylvania interprets claims for coverage based only on the allegations of the complaint, *Feldman* properly concluded there was no coverage because "neither the substantive allegations nor the demands for relief suggest that any advertisement itself infringed [plaintiff's] intellectual property rights."

18

*Id*. at 916. If this case arose under Pennsylvania law, we might well find *Feldman* persuasive here. However, this case arises under New York law, which dictates that the insurer, and the courts, are to look beyond the four corners of the complaint in determining if coverage is available.

Finally, Liberty argues that if it were obligated to provide a defense, its obligation did not arise until after it was provided with Buyer's Direct's discovery demands. High Point argues that Liberty waived its right to challenge the amount of damages on appeal when it entered into a prejudgment stipulation that provided, in relevant part:

> The total amount of defense costs necessarily and reasonably incurred related to the defense of the counterclaims . . . is $1,350,000 . . .
>
> The parties stipulate and agree that this stipulation resolves the remaining issues left to be tried, and there is nothing left to be tried or litigated before Judgment may be entered[.]

App'x at 1192. High Point argues that read together, these issues preclude Liberty from appealing the issue of how much is owed for defense costs.

We disagree. The stipulation does state that there are no issues "left to be tried or litigated before Judgment may be entered," but it does not waive

19

Liberty's right to appeal. High Point does not claim that it does. And as Liberty did not waive its right to appeal, it is entitled to argue on appeal that the "offering for sale" language in the underlying suit did not trigger a duty to defend and that its liability is limited, at most, to the defense costs incurred after it became aware of the discovery demands upon High Point in the underlying suit.

The point is underscored by a colloquy between Liberty's counsel and the district court before the stipulation was signed. The district court and the parties were discussing the amount High Point spent in legal fees. Liberty's counsel sought to clarify whether the district court was "relying on the offering for sale, and relying on that, and that alone triggers a duty to defend, that's one thing. But during your Honor's decision, you mentioned interrogatories and document requests. " App'x at 1056. Liberty's counsel argued that if the discovery demands were the primary reason for the district court's finding that it had a duty to defend, then its liability for legal fees did not arise until High Point provided it with those documents. Counsel then asked the district court if "your Honor was relying solely on the term 'offer for sale.'" App'x at 1057. The district court

replied, "in my rationale, it's not just the interrogatory and document request, though I find that those make the case compelling; . . . [m]y decision is based on the offering for sale." *Id.* Knowing that that the district court was ruling that Liberty was liable for all defense costs, the insurer sensibly agreed to the amount of those costs and also sensibly agreed that there was nothing left to be tried before entering judgment. But the stipulation does not bar Liberty from arguing, on appeal, that its liability is limited to High Point's defense costs incurred after the Liberty was made aware of the discovery demands.

Turning to the merits, we agree with Liberty's position. "[T]he insurer [must] provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." *Fitzpatrick*, 78 N.Y.2d at 67; *Stellar Mech. Servs. of New York, Inc. v. Merchants, Ins. of New Hampshire*, 903 N.Y.S.2d 471, 475 (2d Dep't 2010) (Insurer's duty to defend arose only after service of second complaint, which "suggested, for the first time, a reasonable possibility of coverage" under the insurance policy). Liberty was not provided with the discovery demands until February 12, 2013. We thus vacate the district court's

21

judgment and remand so that the district court may determine the amount of legal fees incurred from February 12, 2013, onward.

## CONCLUSION

For the reasons given above, we affirm the district court's determination that Liberty owed High Point a defense, vacate the damages award and remand for further proceedings consistent with this opinion.

# Appendix

## A137





24



Jon O. Newman, Circuit Judge, concurring in part and in the result:

The issue on this appeal from a judgment imposing upon an insurer the total costs of defending a claim against its insured is whether and when a counterclaim against an insured in an underlying lawsuit triggered the insurer's duty to defend. I concur in all of Judge Pooler's opinion except the portion interpreting and attaching significance to the phrase "offering for sale" in the counterclaim and also concur in the result, which obliges the insurer to pay a yet-to-be-determined portion of its insured's defense costs in the underlying suit. I write separately to explain my disagreement with part of Judge Pooler's opinion.

Paragraph (1)(a) of Coverage B of policy No. YV5-Z21-093433-020 ("the Policy") issued by a group of companies known collectively as Liberty Mutual ("Liberty") obligates it to pay those sums that its insured, High Point Design LLC ("High Point"), becomes legally obligated to pay for "'personal and advertising injury' to which this insurance applies."[1] Joint Appendix ("JA") 559. Paragraph V(2)(b)(7) of the policy defines "personal and advertising injury" to include injury arising out of the "offense" of "[i]nfringing upon another's . . . *trade dress* . . . in

---

[1] It is not clear why the seemingly different categories of "personal injury" and "advertising injury" are combined into one provision.

your 'advertisement.'" JA 535 (emphasis added). Paragraph V(1) of the policy defines "advertisement" as "a paid announcement that is . . . published in the print . . . media . . . about your . . . products . . . for the purpose of attracting customers." JA 534.

The precise issue is whether and when, in the underlying suit, High Point faced a claim of "advertising injury" arising from trade dress infringement in one or more of its advertisements. That suit began with High Point's complaint seeking a declaration that a design patent issued to the defendant Buyer's Direct, Inc. ("BDI") for its Snoozie slippers ("the '183 patent") was invalid. BDI responded with a counterclaim asserting two causes of action: (1) a claim that the design of High Point's Fuzzy Babba slippers infringed BDI's design patent, and (2) a claim that the trade dress of the Fuzzy Babba slippers infringed the trade dress of the Snoozie slippers.

BDI's counterclaim against High Point did not allege any "advertising injury." Nor was there an allegation in the counterclaim that any of High Point's advertisements had injured BDI.[2] Nevertheless, the District Court ruled that

---

[2] The only reference to "advertising" in BDI's counterclaim was that the trade dress of BDI's slippers had acquired secondary meaning because of BDI's advertising and promotion. That allegation supported BDI's claim of trade dress infringement, but had no bearing on whether the counterclaim triggered Liberty's duty to defend because the

Liberty's duty to defend arose because of language in BDI's claim of patent infringement. That claim alleged that High Point had infringed the '183 patent by "offering for sale" its Fuzzy Babba slippers. The District Court ruled that "offering for sale" includes advertising. Judge Pooler's opinion also says that "an 'offer for sale' extends to advertising," although that opinion ultimately and wisely declines to rely solely on the "offering for sale" language. Instead, the opinion states that the "offer for sale" language "coupled with the discovery demands seeking advertising materials in the underlying litigation" triggered Liberty's duty to defend.

Judge Pooler's opinion supports its expansive interpretation of "offering for sale" by analogy from what this Court said about "marketing" in *Century 21, Inc. v. Diamond State Insurance Co.*, 442 F.3d 79 (2d Cir. 2006). We there noted that although "marketing" includes activities that are not advertising, "the term also must be understood to refer to activities that accord with the common use of 'advertising.'" *Id*. at 83. "Similarly," Judge Pooler's opinion states, "while the term

Policy excluded coverage for trade dress infringement by a product, and provided coverage for trade dress infringement only in an advertisement.

'offer for sale' includes activities that are not advertising, it also includes advertising activity."

The terms "marketing" and "offering for sale," however, are simply not similar. Of course, "marketing" includes "advertising," which is one of the principal techniques of marketing. Judge Pooler's opinion contends that "the purpose of most advertising is to 'offer for sale' various goods and services." Not so. The purpose of most (perhaps all) advertising is to persuade the public to buy the advertised goods and services. "Offering for sale" is simply the act of making a product available for sale. It is a distortion of language to say that "offering for sale" sometimes means "advertising." And even if an allegation of "offering for sale" could sometimes mean advertising and trigger a duty to defend under some liability insurance policies, it cannot have such a strained meaning here under a policy that defines advertising to mean published announcements in print media.

The straightforward meaning of "offering for sale" in the underlying lawsuit is readily apparent from the obvious reason why BDI used the phrase in its counterclaim alleging patent infringement. Offering for sale a patented invention is one of the ways to infringe a patent. *See* 35 U.S.C. § 271(a). BDI used

the phrase to render sufficient its patent infringement claim, not to assert an advertising injury claim.

This Court previously decided in *Feldman Law Group, P.C. v. Liberty Mutual Insurance Co.*, 476 F. App'x 913 (2d Cir. 2012), that "offering for sale" did not include "advertising." Judge Pooler's opinion accords no weight to *Feldman* because it was decided under Pennsylvania law, which limits consideration of the scope of duty-to-defend claims to the face of an underlying complaint, whereas New York law, applicable to this case, permits consideration of materials outside the underlying complaint. That distinction permits us to look beyond the wording of BDI's counterclaim to decide this case, but it does not diminish the force of what *Feldman* said about the words "offering for sale" in the complaint in that case. The words "offering for sale" did not trigger a duty to defend in *Feldman*, and they do not do so here.[3]

---

[3] Judge Pooler's opinion also finds some support for its expansive view of "offering for sale" from language in this Court's opinion in *R.C. Bigelow, Inc v. Liberty Mutual Insurance Co.*, 287 F.3d 242 (2d Cir. 2002). That decision, however, sheds no light on the meaning of "advertising injury" in a policy that defines that phrase to include "infringing upon another's . . . trade dress . . . in your 'advertisement.'" The definition of advertising injury in the policy in *Bigelow* did not include trade dress infringement in an advertisement. Instead, the definition included "[c]opying . . . advertising ideas or advertising style," *id*. at 245 & Appx. A-35, ¶ V(1)(d), and our Court's decision rather generously ruled that "to the extent that Bigelow [, the insured,] allegedly copied Celestial's [the plaintiff in the underlying suit] packaging and displayed Bigelow's

Judge Pooler's opinion salvages High Point's attempt to impose a duty-to-defend obligation on Liberty Mutual by relying on BDI's discovery demand in the underlying suit for "[a]ll advertising . . . documents . . . referring and/or relating to High Point's Accused Products." Doc. Req. No. 22. This demand, her opinion concludes, triggered Liberty's duty to defend, and hence liability for High Point's defense costs, but only those incurred after the date when Liberty was provided with the discovery demand. Before considering that conclusion, I note that by starting Liberty's liability for defense costs no earlier than the date when Liberty became aware of BDI's document request, Judge Pooler's opinion effectively renders its interpretation of the "offering for sale" language in BDI's counterclaim dictum. The opinion's holding, with which I agree for reasons explained below, is based on Liberty's awareness of BDI's document request. If the existence of the words "offering for sale" in the patent infringement portion of BDI's counterclaim, whatever their meaning, triggered liability under the Policy, that liability would have covered defense costs incurred from the date Liberty became aware of BDI's counterclaim. That was the District Court's holding, which is now vacated.

---

packaging in published advertisements, the [underlying] complaint sufficiently alleged that Bigelow copied Celestial's 'advertising ideas or advertising style,'" *id*. at 247.

Whether knowledge of BDI's discovery demand rendered Liberty liable for defense costs in the underlying suit incurred after acquiring such knowledge is a somewhat close question. As relevant to this case, the Policy does not oblige Liberty to defend claims for all injuries arising from advertising High Point's slippers. From the universe of all such claims, it covers only claims for slipper advertising that infringes another product's trade dress. It is arguable that Liberty's liability for defense costs began not when Liberty became aware of BDI's document demand, but only later when High Point assembled its response to the document request and brought to Liberty's attention particular ads depicting the Fuzzy Babba slippers. Such ads, viewed in light of the Policy's coverage of liability for trade dress infringement in an advertisement, would have shown Liberty that its insured faced at least a reasonable risk of liability to BDI. However, it was so likely that some of High Point's ads for its slippers would show a photograph or a drawing of them that knowledge of the document demand for all ads for High Point's accused products sufficed to trigger an obligation to defend and hence liability for defense costs incurred after knowledge of the demand.

For these reasons I concur in Judge Pooler's opinion, with the exception noted above, and also concur in this Court's judgment remanding for

determination of the amount of the defense costs incurred after Liberty became aware of the document demand.